**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No.: 1:23-21541-cv-WILLIAMS**

FU JING WU a/k/a LEO WU,

      Petitioner,

vs.

CHUN LIU,

      Respondent.

_____/

CHUN LIU, individually and on behalf of
all others similarly situated,

      Plaintiff,

vs.

FU JING WU a/k/a LEO WU and
WAI KIN BENNY LAM,

      Defendants.

_____/

**RESPONDENT, CHUN LIU'S (I) MOTION FOR REMAND AND INCORPORATED
MEMORANDUM OF LAW; AND (II) RESPONSE IN OPPOSITION TO LEO WU'S
PETITION TO COMPEL ARBITRATION WITH INCORPORATED PETITION FOR
<u>AND NOTICE OF REMOVAL AND APPLICATION FOR STAY</u>**

Plaintiff-Respondent, CHUN LIU ("Liu"), individually and on behalf of all others similarly situated ("Class") (collectively, the "Plaintiff"), pursuant to 28 U.S.C. § 1447(c), by and through undersigned counsel, hereby files this (I) Motion for Remand and Incorporated Memorandum of Law; and (II) Response in Opposition to Defendant-Petitioner, Fu Jing Wu a/k/a Leo Wu's ("Wu" or "Defendant") Petition to Compel Arbitration with Incorporated Petition for and Notice of Removal and Application for Stay (the "Petition") [ECF No. 1], and states:[1]

## I.      INTRODUCTION

Between 2013 and 2021, Wu and others, including Wai Kin Benny Lam ("Lam"), misappropriated and diverted tens of millions of dollars from unsuspecting EB-5 visa applicants who invested a collective sum of $72 million into Florida Immigration Building Funding LLC ("FIBF") and Triton 7880 LLC ("Triton 7880"), solely for their personal gain. The multi-million-dollar investment was intended for the acquisition and development of a mixed-use commercial project situated at the former U.S. Immigration Building on Biscayne Boulevard at NE 79th Street (the "Triton Center Project"), which was supposed to serve as the job creation venture through which the foreign investors would qualify for permanent U.S. residency under the USCIS EB-5 immigrant investor program. The investors' visa eligibility hinged on proper utilization of their investment funds with the goal of generating substantial economic benefits for Miami-Dade. Wu's and Lam's criminal conduct thwarted the realization of that opportunity for both the investors and the Miami community.[2]

The underlying class action lawsuit originated from a derivative state court action filed by Plaintiff on behalf of FIBF in October 2020 following persistent efforts to acquire essential books and records from FIBF and facing continuous resistance ("Receivership Action").[3] As a result of Wu's and Lam's looting and plundering of the company coffers and refusal to cooperate in discovery, Honorable Michael Hanzman struck all of FIBF's pleadings and appointed Michael I. Goldberg as receiver of FIBF in April 2021 ("Receiver"). Subsequently, the Receiver filed an ancillary complaint against Wu and Lam for, among other things, fraud, which resulted in a global settlement between the Receiver and Wu in December 2022 wherein Mr. Goldberg was also

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Petition [ECF No. 1].
[2] For brevity, Plaintiff directs the Court to its Emergency Motion for Asset Freeze [ECF No. 8-5].
[3] *Liu v. Florida Immigration Building Funding LLC, et al.*, Case No.: 2020-022425-CA-43.

appointed as receiver of Triton 7880. Remarkably, Wu *never* sought arbitration of those similar fraud claims asserted against him by the Receiver.

Now confronted with the possibility of losing a $5 million dollar payout under the settlement with the Receiver, Wu seeks shelter under an arbitration clause in a Limited Membership Interest Subscription, Sale and Purchase Agreement between FIBF and Plaintiff ("Purchase Agreement") [ECF No. 8-62, pp.21-34] – which Wu is neither a signatory nor party to – in a transparent attempt to conceal his criminal actions within the confines of arbitration. Indeed, within 48-hours of two highly critical Miami Herald articles profiling Wu's fraudulent scheme and embezzlement of investor funds to acquire a ±16-acre site in El Portal,[4] Wu suddenly moved to compel arbitration, despite Wu previously filing numerous motions, objections, responses, and propounding discovery directed at the merits of Plaintiff's claims in this litigation—***none*** of which made a single reference to arbitration.

Thereafter, on April 24, 2023, just hours after Plaintiff filed its Opposition to Motion to Compel Arbitration [ECF No. 8-66], upon recognizing the fatal impact of the Third District's binding ruling in *Estate of Orlanis ex rel. Marks v. Oakwood Ter. Skilled Nursing & Rehab. Ctr.*, 971 So.2d 811 (Fla. 3d DCA 2007), Wu hastily filed his Petition in a last-ditch effort to stall this action and evade the consequences of his litigation conduct.

This case should not have been removed in the first instance. All counts alleged in Plaintiff's First Amended Complaint are state law claims and do not invoke federal jurisdiction under 28 U.S.C. § 1331.[5] Wu's Petition is frivolous, defective, and for the reasons below, remand must be granted.

## II.     RELEVANT PROCEDURAL BACKGROUND

On March 16, 2023, Plaintiff filed its Class Action Complaint in the underlying state court action, as amended on March 21, 2023 ("Amended Complaint") [ECF No. 8-18], against Wu and Lam for common law fraud, violation of Florida SIPA (Fla. Stat. § 517.301), Florida RICO Act (Fla. Stat. §§ 772.103 & 895.01, *et seq*.), and conspiracy to violate Florida RICO.

---

[4] https://www.miamiherald.com/article272336928.html, *Money Pit: How an Overhaul of Miami's Former Immigration Building Became an Epic Disaster* (April 11, 2023); https://www.miamiherald.com/article273503180.html, *Where Did the Money for the 79th Street Building Rehab Go? Into This Weed Patch* (April 9, 2023).
[5] Wu concedes there is no federal jurisdiction absent 9 U.S.C. § 203 [ECF No. 11, ¶4].

On March 19, 2023, Plaintiff filed its Emergency Ex Parte Motion for Pre-Judgment Writ of Attachment and Garnishment, Asset Freeze, and Other Equitable Relief ("Emergency Motion") [ECF No. 8-5] to restrain distribution of $5 million dollars to Wu from the net sale proceeds of certain real properties (including the Triton Center Project) to be liquidated by the Receiver pursuant to a settlement reached between the Receiver and Wu in the Receivership Action.

Subsequently, Wu agreed to waive service of process [ECF No. 8-24], and proceeded to file the following in the underlying state court action: (1) Emergency Motion for Protective Order [ECF No. 8-30]; (2) Motion in Limine [ECF No. 8-48]; (3) Response in Opposition to Plaintiff's Emergency Motion -and- Motion to Vacate Order on Plaintiff's Emergency Motion entered March 24, 2023 [ECF No. 8-41]; (4) Supplemental Response in Opposition to Plaintiff's Emergency Motion [ECF No. 8-46]; (5) Objections to Plaintiff's Subpoenas *Duces Tecum* on non-parties, Citibank N.A., 7800 Biscayne Blvd LLC, New Wave Loans Residential LLC, and Kennedy Funding Financial LLC [ECF Nos. 8-56; 8-57; 8-58; 8-59]; (6) Notice of Taking Deposition of the Receiver and Subpoena *Duces Tecum* on the Receiver [ECF No. 8-52, p.4];[6] (7) Notice of Taking Deposition of Plaintiff [ECF No. 8-54]; and (8) First Set of Requests for Production to Plaintiff on the merits of its Amended Complaint [ECF No. 8-66, pp.35-43].

On March 24, 2023, following a special set hearing on Plaintiff's Emergency Motion, the state court entered an order rescheduling the matter for evidentiary hearing to March 29, 2023 and further directing the Receiver not to disburse any sums to Wu pending further order of the court [ECF No. 8-31]. Wu later moved to vacate this order [ECF No. 8-41].

On March 29, 2023, Plaintiff's Emergency Motion was denied without prejudice based on the fact that the $5 million owed to Wu under the settlement with the Receiver cannot be (and would not be) disbursed until the state court approves the Receiver's plan of distribution [ECF No. 8-56], thereby obviating the "immediate danger of significant loss or damage" prong under Florida Statute § 895.05(6).[7]

Thereafter, on April 13, 2023, Wu filed his Motion to Compel Arbitration and Stay Litigation ("Motion to Compel Arbitration") [ECF No. 8-62], which Plaintiff filed its Opposition

---

[6] Which the Receiver objected to twice [ECF No. 8-66, pp.26-33].

[7] It was Wu, not the Receiver or Plaintiff, who proposed that all monies due to Wu under the settlement were to be paid pursuant to a plan of distribution [ECF No. 8-41, ¶9 & p.20]. Plaintiff reserved, and reserves, all rights necessary to arrest such funds.

to on April 24, 2023 [ECF No. 8-66]. The parties agreed to a special set hearing on the Motion to Compel Arbitration scheduled for May 17, 2023 which was subsequently canceled by the state court after Wu filed his Petition.[8]

### III.   MEMORANDUM OF LAW

#### A.   THE REMOVING PARTY BEARS THE BURDEN TO ESTABLISH JURISDICTION AND THAT REMOVAL IS PROPER, AND ALL DOUBTS ARE RESOLVED IN FAVOR OF REMAND

Wu removed the underlying state court action to this Court under 9 U.S.C. § 205, the removal provision of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), based solely on the Arbitration Clause in the Purchase Agreement which Wu is neither a party nor signatory to.

Federal courts construe removal statutes strictly. *See Sygenta Crop Protection Inc. v. Henson*, 537 U.S. 28, 32 (2002); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941). "[R]emoval procedures are strictly construed against the party seeking removal." *B.N.Y.M. as Tr. to JPMorgan Chase Bank, N.A. v. Allen*, 19-CV-62182-MGC, 2020 WL 5164206, at *1 (S.D.Fla. Aug. 31, 2020); *see Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir.1998) ("We construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party, in this case the plaintiff[]"). Courts also must review the propriety of removal based on the removing documents. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 (11th Cir.2007) ("under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction").

All doubts should be resolved in favor of remand to state court. *See Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999); *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir.1997); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and

---

[8] Wu's gamesmanship is obvious. By successively moving to compel arbitration and stay litigation in both state and federal court, Wu is plainly attempting to hinder and delay this lawsuit and prevent Plaintiff and the Class from once again moving for relief under, *inter alia*, Florida Statute § 895.05 to prevent Wu from diverting the $5 million offshore.

defendant clash about jurisdiction, uncertainties are resolved in favor of remand”).

Wu bears the burden of establishing that the jurisdictional requirements under the Convention are met. *Ytech 180 Units Miami Beach Invest. LLC v. Certain Underwriters at Lloyd's*, 359 F.Supp.3d 1253, 1261 (S.D.Fla.2019); *see Singh v. Carnival Corp.*, 550 Fed.Appx. 683 (11th Cir.2013). Wu also bears the burden of establishing that removal is proper. *See Painter v. Cincinnati Ins. Comp.*, 09-CV-61761-WJZ, 2010 WL 11505205, *3 (S.D.Fla. March 18, 2010). Wu fails to carry his burden.

**1.  Wu's Petition is Defective for Failure to Join Defendant Lam**

“[G]eneral removal law applies to cases which are removed under the Convention’s removal provision because § 205 incorporates the ‘procedure for removal of causes otherwise provided by law,’ which means 28 U.S.C. §§ 1441–1452.’” *Alvarez v. Apollo Ship Chandlers, Inc.*, 02-CV-21045-UU, 2002 WL 31933666, at *1 (S.D.Fla. May 28, 2002) (quoting 9 U.S.C. § 205); *see also Ytech*, 359 F.Supp.3d at 1261. “The procedural requirements of § 1446(a) and (b) are generally applicable to a removal under the New York Convention. … Failure to comply with § 1446(a) and (b) constitutes a defect in removal procedure within the meaning of § 1447(c).” *In re Ocean Marine Mut. Prot. & Indem. Ass'n, Ltd.*, 3 F.3d 353, 355 (11th Cir.1993).

“It is well-settled that all defendants in a multi-defendant case must join in a removal for the removal to be valid.” *Allen*, 2020 WL 5164206, at *1 (citing 28 U.S.C. § 1446(b)). “To effect removal, each defendant must join in the removal by signing the notice of removal or by explicitly stating for itself its consent on the record, either orally or in writing, within the 30–day period prescribed in 28 U.S.C. § 1446(b).” *Nathe v. Pottenberg*, 931 F.Supp. 822, 825 (M.D.Fla.1995); *see also Jasper v. Wal–Mart Stores*, 732 F.Supp. 104, 105 (M.D.Fla.1990) (noting “all defendants, served at the time of filing the petition, must join in the removal petition; the petition must be signed by all defendants or the signer must allege consent of all defendants”).

Lam, a named co-defendant, was personally served with a copy of the summons and complaint by e-mail on April 13, 2023 [ECF No. 8-69, p.3] – prior to Wu’s Petition – in accordance with the state court’s Order Granting Plaintiff’s Motion for Order Authorizing Alternative Service of Process entered March 30, 2023 [ECF No. 8-51]. However, Lam is not named as a respondent in the Petition, which is silent as to Lam’s position with respect to removal. *Allen*, 2020 WL 5164206, at *1. Moreover, Lam has not joined this removal and Wu’s Petition fails to allege or mention service on Lam. “This defect is fatal to Defendant’s removal and remand is therefore

5

warranted." *Id*. (citing 28 U.S.C. § 1446(b)); *see Overlook Gardens Prop., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1198 (11th Cir.2019) ("a lack of unanimous consent to removal is a defect in the removal process."); *In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1410 n.2 (11th Cir.1997) ("The failure to join all defendants in the petition is a defect in the removal procedure").

### 2.   The First Jurisdictional Prerequisite is Not Satisfied and Arbitration Cannot be Compelled Because Wu is Not a Signatory or Party to the Purchase Agreement

 "Upon removal under the Convention, district courts must engage in a two-step inquiry to determine jurisdiction, limiting its examination to the pleadings and the notice of removal. … First, the court assesses whether the notice of removal describes an arbitration agreement that may fall under the Convention. … Second, the district court must determine whether on the face of the removal and the pleadings, there is a non-frivolous basis to conclude that the agreement relates to an arbitration agreement that falls under the Convention." *Ytech*, 359 F.Supp.3d at 1260–61.[9]

Regarding the first step of the Court's jurisdictional inquiry, "four jurisdictional requirements … must be satisfied for removed cases under § 205." *Watt v. NCL (Bahamas) Ltd.*, 10-CV-20293-FAM, 2010 WL 2403107, at *1 (S.D.Fla. June 15, 2010). While the Arbitration Clause provides for arbitration to occur in the U.S., arises out of a commercial legal relationship between FIBF and its members, and Liu is not a U.S. citizen, the very first jurisdictional prerequisite is not met here, which is whether there is "an agreement in writing within the meaning of the Convention." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir.2005).

Article II(1) of the Convention states that, "[e]ach Contracting State shall recognize an ***agreement in writing under which the parties*** undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship…" *Convention*, June 10, 1958, 21 U.S.T. 2517 (Dec. 29, 1970) (emphasis added). Article II(2) further provides that, "[t]he term ***'agreement in writing'*** shall include an arbitral clause in a contract or an arbitration agreement, ***signed by the parties*** or contained in an exchange

---

[9] As a threshold matter, "interpretation of a contract is ordinarily a matter of state law." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015). "The issue of whether or not the parties have agreed under the FAA to arbitrate a dispute is generally decided based on state-law principles that govern the formation of contracts." *Viamonte v. Biohealth Techs., Inc.*, 09-CV-21522-ASG, 2009 WL 4250578, at *2 (S.D.Fla. Nov. 25, 2009). Here, Florida law applies to the construction, interpretation, and effect of the Purchase Agreement, and thus the Arbitration Clause contained therein. Further, the Court must apply Florida law because the parties rely heavily on Florida law in their briefing. *Ginsberg v. Vitamins Because LLC*, 2021 WL 7707264, at *4 n.5 (S.D.Fla. June 9, 2021) (Williams, J.).

of letters or telegrams." *Id.* (emphasis added). "Without an agreement in writing that satisfies this provision, there is no subject matter jurisdiction." *Ytech*, 359 F.Supp.3d at 1261–62.

Here, there is **no** "agreement in writing" signed by both Plaintiff and Wu in which they expressly agreed to resolve all or any disputes through arbitration. A fundamental principle of arbitration is that it is a "matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. Of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *AT&T Techn., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). Neither Wu nor Lam are parties, much less signatories, to the Purchase Agreement, and therefore they did not provide any consideration in exchange for the Arbitration Clause sought to be enforced. *See Pick Kwik Food Stores, Inc. v. Tenser*, 407 So.2d 216, 218 (Fla. 2d DCA 1981) ("A binding contract requires consideration"). "The right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir.2011). "[Wu] insists that the law empowers him to shunt [Plaintiff's] claims into an arbitral forum, despite the fact that, if the shoe were on the other foot, [Plaintiff] could not force appellant to arbitrate those claims—or any other claims, for that matter." *McCarthy v. Azure*, 22 F.3d 351, 361 (1st Cir.1994). Indeed, the lack of mutuality of obligation forecloses Wu's attempt to compel arbitration against Plaintiff. *Id.*

Supreme Court precedent dispels the notion that there is always a federal policy in favor of arbitration. In *Granite Rock Co., v. Int'l. Broth. of Teamsters*, 130 S.Ct. 2847 (2010), a unanimous Supreme Court held that the federal policy favoring arbitration is <u>not</u> applicable if the formation of the parties' arbitration agreement, its enforceability, or application, is at issue before the Court. *Id.* at 2857-58. "Because arbitration is a matter of contract, … the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. Pac. Health Sys. Inc.*, 389 F.3d 1191, 1200 (11th Cir.2004); *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir.2003) ("federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties or to the determination of who is bound by the arbitration agreement"). Put simply, the parties dispute whether an arbitration agreement was formed between Plaintiff and Wu precisely because Wu concedes that he *never* signed the Purchase Agreement.

**3.** **The Second Jurisdictional Prerequisite is Not Satisfied Because Plaintiff's Claims Do Not Relate to or Arise Out of the Purchase Agreement**

Regarding the second step of the Court's jurisdictional inquiry, Wu also has not established that the underlying lawsuit "relates to" an arbitration agreement that falls under the Convention. *Ytech 180*, 359 F.Supp.3d at 1262. An arbitration agreement "relates to" the subject matter of the lawsuit if the agreement could conceivably affect the outcome of the case. *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir.2002).

As argued below, nothing in the Amended Complaint alleges claims involving the performance of *any* contractual obligations under the Purchase Agreement, whether by Wu, Lam, or anyone else. Plaintiff does not allege breach of the terms of the Purchase Agreement. Plaintiff's statutory and common law tort claims are wholly independent from the Purchase Agreement. FIBF, the only other signatory to the Purchase Agreement, is in receivership, is not a participant in this lawsuit, and voluntarily waived the Arbitration Clause. Wu has not asserted claims against anyone else, let alone others who have arbitration rights, which could conceivably affect the outcome of this case. As such, Plaintiff's claims against Wu and Lam do not relate to an arbitration agreement falling under the Convention, and this Court lacks subject matter jurisdiction over them. *See* 9 U.S.C. § 205.

Removal under § 205 is not limitless. When considering questions of arbitration, a court should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Indeed, "[w]ithout meaningful limit" on the scope of § 205, "a defendant could obtain federal jurisdiction anytime it is party to an arbitration agreement falling under the Convention, regardless of whether the arbitration provision has anything to do with the issues raised in the state court lawsuit." *HSC Holdings v. Hughes*, 2012 WL 4127960, at *3 (S.D.Tex. Sept. 18, 2012); *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1550 (11th Cir.1985) ("Mere presence of an arbitration clause is insufficient to enforce the arbitration agreement"). Thus, while jurisdiction under § 205 is broad, it does not encompass "frivolous petition[s] for removal." *Beiser*, 284 F.3d at 671.

**B.** **THERE ARE NO APPLICABLE EXCEPTIONS TO THE GENERAL RULE WHICH PERMIT WU, A NON-PARTY AND NON-SIGNATORY TO THE PURCHASE AGREEMENT, TO COMPEL ARBITRATION**

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate it." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir.2011). The second step is whether "legal constraints external to the parties' agreement foreclosed arbitration." *Klay*, 389 F.3d at 1200. Wu's Petition concedes that there is no bilateral arbitration agreement between the parties. *Ginsberg v. Vitamins Because LLC*, 19-CV-22702, 2021 WL 7707264, at *4 (S.D.Fla. June 9, 2021) (Williams, J.). "Under Florida Law, the general rule is that a non-signatory to an agreement containing an arbitration provision cannot compel a signatory to submit to arbitration." *Id.* (citing *Lawson*, 648 F.3d at 1168). Here, neither Wu nor Lam are parties or signatories to an agreement containing an arbitration provision with the Plaintiff or Class. *Id.* at *5. For the reasons discussed below, Wu cannot compel Plaintiff to arbitrate its claims under agency theory, the doctrine of equitable estoppel, or as a third-party beneficiary. *Id.*

**1.** **Agency Principles Do Not Apply**

Neither Wu nor Lam can compel arbitration because the Plaintiff and Class sued them in their *individual capacity* for their own acts of fraud and criminal racketeering. The Purchase Agreement at issue is solely between Plaintiff and FIBF. Yet, because Lam signed the Purchase Agreement in his representative capacity on behalf of FIBF, Wu incorrectly assumes he may compel arbitration on that basis for his personal benefit. On the face of the Purchase Agreement, Lam himself signed only in his representative, not individual, capacity as (former) manager of FIBF, and thus he is not a signatory or party to the agreement.

"It is hornbook law that, to be bound, one must be a party to a contract. There is no 'arbitration' exception to this principle of law." *Prudential-Bache Sec., Inc. v. U.S. Optical Frame Co.*, 534 So.2d 793, 795 (Fla. 3d DCA 1988). "[I]t is settled beyond peradventure that a person signing a contract only in a corporate capacity, and unambiguously indicating that fact on the face of the contract documents, does not thereby become a party to the agreement." *Azure*, 22F.3d at 356. "Signing a contract as an agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally." *Liberty Comms, Inc. v. MCI Telecomms. Corp*., 733 So.2d 571, 575 (Fla. 5th DCA 1999) (citing *Azure*, 22 F.3d at 361); *see also Johnson v. Pires*, 968 So.2d 700, 702 (Fla. 4th DCA 2007) ("[A] person who signs a contract only in a corporate capacity is not bound as an agent.") (citing *Azure*, 22 F.3d at 356); *Beltre v. Micron Devices, LLC*, 18-CV-

20399-FAM, 2018 WL 6614284, at *2 (S.D.Fla. Dec. 13, 2018) ("In Florida, a non-signatory cannot compel arbitration merely because he is an agent of one of the signatories.") (citing *Koechli v. BIP Int'l, Inc.,* 870 So.2d 940, 944 (Fla. 1st DCA 2004)) ("We reject the broad construction of the agency exception urged by appellants, which would permit a non-signatory agent to a signatory to invoke arbitration simply because the agency relationship exists. This argument erroneously blurs the legal distinction between individual capacity and representative capacity which is 'a meaningful legal difference.'") (quoting *Azure,* 22 F.3d at 360); *accord Westmoreland v. Sadoux,* 299 F.3d 462, 466 (5th Cir.2002) ("a non-signatory cannot compel arbitration merely because he is an agent of one of the signatories."); *Interocean Ship Co. v. Nat'l Ship Trading Corp.,* 523 F.2d 527, 538 (2nd Cir.1975) (same), *cert. denied,* 432 U.S. 1054 (1976).

Further, it is not enough that Wu and FIBF may be "affiliated." *Variable Annuity Life Ins. Co. (VALIC) v. Dull*, 09-CV-80113-KAM, 2009 WL 3064750, at *4 (S.D.Fla. Sept. 22, 2009). The Purchase Agreement is between Plaintiff and FIBF with no mention of Wu or Lam acting as an agent for FIBF. *Zamora v. E. Coast Right of Way Maint., Inc.*, 208-CV-539-JES, 2008 WL 4716909, at *5 (M.D.Fla. Oct. 23, 2008). FIBF and Wu "are not so close that only by permitting the nonsignatory to invoke arbitration would the evisceration of Agreement between [Plaintiff and FIBF] be avoided. No claims were made against [FIBF] in this action and the Agreement stands as to any matter between the Plaintiffs and [FIBF]." *Id.* Accordingly, the mere fact that Lam executed the Purchase Agreement as a representative of FIBF does not *de facto* mean that he or anyone else is bound to arbitrate claims against Lam or Wu personally. *See Massa v. Michael Ridard Hosp. LLC*, 306 So.3d 1106, 1109 n.4 (Fla. 3d DCA 2020).

### 2.   The Doctrine of Equitable Estoppel Does Not Apply

"The issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law." *Kroma Makeup EU LLC v. Boldface Licensing & Branding, Inc*., 845 F.3d 1351, 1354 (11th Cir.2017). Under Florida's doctrine of equitable estoppel, a non-signatory seeking to compel a signatory to arbitrate must satisfy a "two-step framework: (1) the non-signatory must show the signatory's reliance on the agreement and (2) the arbitration clause must cover the dispute." *It Works Mktg., Inc. v. Melaleuca, Inc*., 20-CV-1743-KKM, 2021 WL 1650266, at *5 (M.D.Fla. Apr. 27, 2021). "Reliance on the contract in this context requires that a party must actually depend on the underlying contract to assert its claims." *Ginsberg*, 2021 WL 7707264, at *5–6 (quoting

*Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So.3d 644, 646 (Fla. 3d DCA 2014)). "[I]t is not enough for a plaintiff's allegations to rely simply on the fact that an agreement exists; the test is whether they rely on or depend on the terms of the written agreement." *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1119 (11th Cir.2020). "[A] claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public." *Leidel v. Coinbase, Inc.*, 729 F.App'x 883, 887 (11th Cir.2018); *see also It Works*, 2021 WL 1650266, at *4 ("A signatory does not rely on a contract to assert its claims against a non-signatory when the signatory's claims rely on obligations otherwise imposed by law ... If a law outside of the contract places duties on the non-signatory, then any alleged breaches flow from that law—not the contract").

In *Coinbase*, the Eleventh Circuit determined that the plaintiffs' claims, based on the actions of a fraudster using Coinbase's website, were not sufficiently related to the website's user agreement. The court ruled that because plaintiffs' claims were based on independent duties created by the Bank Secrecy Act and Florida tort law, they did not bear a "significant relationship" to the user agreement containing the arbitration clause to allow equitable estoppel. *Id.*, 729 F.App'x at 888. Similarly, in *It Works*, a non-signatory defendant sought to compel arbitration of a plaintiff's claims for trade secret misappropriation and tortious interference based on the distributors' agreements with plaintiff and the doctrine of equitable estoppel. *Id.*, 2021 WL 1650266 at *2. The court denied that request, ruling that "[n]one of [plaintiffs'] four claims against [defendant] rely on the Distributor Agreement because each claim arises from alleged breaches of duties otherwise imposed by law." *Id.* at *5.

Further, in *Herbalife*, the arbitration clauses at issue were agreements between the aggrieved plaintiff-distributors and Herbalife only. The Eleventh Circuit held that the plaintiffs' federal RICO claims did not rely on the terms of the distributor agreements and were not founded in or inextricably bound up with such agreements, and therefore the top distributor-defendants could not compel arbitration based on the agreements. *Id.*, 967 F.3d at 1119 ("it is not enough that the alleged misconduct is somehow connected to the obligations of the underlying agreements; the misconduct must be *founded in* or *inextricably bound up with* such obligations") (emphasis original). The Eleventh Circuit also noted that equitable estoppel did not apply because the plaintiffs were not seeking to hold the defendants liable based on any duties imposed by the

distributor agreements. *Id*. at 1119-20.

A court may order arbitration of a claim against a non-signatory *only where* the claims are based upon some "concerted misconduct" with a party who is entitled to claim the benefit of the arbitration agreement. *Id*. However, no such "concerted misconduct" by FIBF – the only other signatory – is alleged in the Amended Complaint. The "concerted misconduct" prong of the equitable estoppel exception analysis is only applicable when the signatory "raises allegations of substantially interdependent and concerted misconduct by *both* the nonsignatory *and* one or more of the signatories to the contract." *Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1321 (11th Cir.2013) (emphasis added) (refusing to apply the "concerted misconduct" prong where the plaintiffs had not named the non-party signatory as a defendant); *see also Pineda v. Oceania Cruises, Inc.*, 283 F.Supp.3d 1307, 1311 (S.D.Fla.2017) (finding equitable estoppel inapplicable where plaintiff did not name signatory as defendant in addition to non-signatories).

Wu's misappropriation of tens of millions of investor funds and misrepresentations concerning the actual use of those funds could have occurred with or without the existence of the Purchase Agreement. No written purchase or operating agreement was necessary for Plaintiff to become a member of FIBF. *See, e.g.,* Fla. Stat. §§ 605.0401 & 605.0102(45). Wu's tortious conduct did not arise from any performance of any duties in the Purchase Agreement, which merely memorialized the sale of membership interests. Like in *Coinbase*, *It Work*s, and *Herbalife*, the instant dispute also does not arise out of the Purchase Agreement itself. Rather, Plaintiff's claims allege that Wu and Lam breached duties imposed by state and federal statutes and common law that are wholly independent of the Purchase Agreement. *See, e.g., Mgmt. Computer Controls, Inc. v. Charles Perry Const, Inc*., 743 So.2d 627, 632 (Fla. 1st DCA 1999) ("The unfair trade claim is an independent statutory claim that is severable from all the remaining claims. It does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract"). The particular Purchase Agreement at issue, referred to once in the Amended Complaint [ECF No. 8-18, ¶177], is "at least one step removed from the actual transactions that generated the [Amended Complaint]"—namely, the misrepresentations made by Wu and Lam to Plaintiff and the Class regarding the true purpose of the investment and improper use of funds. *Herbalife*, 967 F.3d at 1119. Instead of being utilized for the development of the Triton Center Project as promised (and as strictly required by the USCIS), Wu and Lam diverted the investors' funds to financial back Wu's acquisition and/or finance of completely unrelated properties, in flagrant violation of the EB-

5 program rules and requirements. *See Liu v. Sec. & Exch. Comm'n*, 207 L.Ed.2d 401 (2020) ("Investments in EB-5 projects are subject to the federal securities laws"). At bottom, construction of the Purchase Agreement is unnecessary for resolution of Plaintiff's and the Class's claims which concern Wu's and Lam's fraudulent misappropriation of investor funds and abuse of the EB-5 program to the detriment of the Plaintiff and Class. *See Rolls-Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So.2d 768, 771 (Fla. 3d DCA 2007).

A dispute does not "arise out of or in connection with" a contract just because the dispute would not have arisen if the contract "had never existed." *Seaboard Coast Line R.R. Co. v. Trailer Train Co.,* 690 F.2d 1343, 1351 (11th Cir.1982). "Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir.2001). "[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement." *Seifert v. U.S. Home Corp*., 750 So.2d 633, 638 (Fla.1999). Indeed, "[a] but-for relationship between the claims and the contract alone is not enough to warrant equitable estoppel ... For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1343 (11th Cir.2012); *Schreiber v. Ally Fin. Inc.*, 634 Fed.Appx. 263, 264 (11th Cir.2015) ("A mere but-for relationship between plaintiff's claims and the contract is insufficient to warrant equitable estoppel").

Here, Plaintiff's claims, which are based upon common law fraud, Florida SIPA, and Florida RICO, clearly do not seek to enforce the terms of the Purchase Agreement. Therefore, "equitable estoppel is inapplicable because none of the claims in the [First] Amended Complaint are attempts to enforce contractual rights under the [Purchase Agreement]." *Ginsberg*, 2021 WL 7707264, at *6. As Plaintiff's claims do not arise from, but instead are wholly independent of, the Purchase Agreement – which neither Lam nor Wu are signatories to – Wu cannot invoke equitable estoppel. *Id.*; *see also Mims v. Glob. Credit & Collection Corp.*, 803 F.Supp.2d 1349, 1358 (S.D.Fla.2011) (finding that statutory claims were not sufficiently intertwined with contract to apply doctrine of equitable estoppel, and denying motion to compel arbitration, concluding that

the plaintiff's "claims are not based on the terms of the Agreement" even though such claims "presume the existence of the Agreement").

### 3. Wu is Not a Third-Party Beneficiary of the Purchase Agreement

The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt*, 489 U.S. at 479.[10] "Because arbitration is a matter of contract, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Rolls-Royce*, 960 So.2d at 770 (quoting *AT&T*, 475 U.S. at 648). Yet, Wu's Petition ignores the longstanding contract-law principle that "arbitration provisions are personal covenants, usually binding only upon the parties to the covenant." *Federated Title Insur., Inc. v. Ward*, 538 So.2d 890, 891 (Fla. 4th DCA 1989); *Karlen v. Gulf & Western Indust., Inc*. 336 So.2d 461, 462 (Fla. 3rd DCA 1976). "The right to compel arbitration stems from a contractual right" which "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir.1993).

"Under Florida law, a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir.2005). "If the contracting parties had no such purpose in mind, any benefit from the contract reaped by the third party is merely 'incidental,' and the third party has no legally enforceable right in the subject matter of the contract." *Ginsberg*, 2021 WL 7707264, at *9. "The Florida Supreme Court has explained that the question whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract." *Id.* (citing *A.R. Moyer, Inc. v. Graham,* 285 So.2d 397, 402 (Fla.1973)).

Here, the contract language belies Wu's argument that he may compel arbitration of Plaintiff's claims under the Convention based on the Purchase Agreement executed between the Plaintiff and FIBF. Wu is a not a signatory to the Purchase Agreement, which says nothing about

---

[10] Plaintiff does not concede that the FAA applies to the Purchase Agreement or transaction between the Subscriber (Liu) and the Company (FIBF). The Purchase Agreement states nothing about applying the FAA. The underlying transaction and contract are arguably not in interstate commerce, as the FAA requires, because they involve Florida-only real estate transactions, concentrated in Miami-Dade County where Wu and Lam conduct business. *See Klay*, 389 F.3d at 1200 n.9. Plaintiff's allegations concerning Wu's fraudulent conveyances and diversion of funds offshore and abroad have absolutely nothing to do with the Purchase Agreement.

any of the Defendants, nor is there any indication of a course of dealing between the parties from which an intent to create third-party beneficiaries could be inferred. *See Azure,* 22 F.3d at 362. The language of the Purchase Agreement indicates that the contemplated sale transaction is only between those "Parties" who signed the agreement. Indeed, the preamble of the Purchase Agreement specifically defines "Parties" as the "Subscriber" (Chun Liu) and the "Company" (FIBF) [ECF No. 8-62, p.21].

Courts have made clear that "a third party may claim a contract benefit only if the parties to the contract clearly express an intention to confer a benefit on the third party … Indeed, [a] non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs." *Mims*, 803 F.Supp.2d at 1354 (quoting *Bochese*, 405 F.3d at 983). "The contracting parties' intent to benefit the third party must be *specific* and must be *clearly expressed* in the contract in order to endow the third party beneficiary with a legally enforceable right." *Bochese*, 405 F.3d at 982 (emphasis original) (citing cases and noting that it must be established that *both* parties to the contract actually and expressly intended to benefit the third party); *see also Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So.3d 146, 148 (Fla.2016) (stating that the third-party beneficiary must prove four elements including "the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party"). "[A] nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the intended third-party beneficiary of the contract." *Massa*, 306 So.3d at 1109. "In the absence of any 'specific mention' of the third party, 'it would be extraordinarily difficult for [that party] to establish that under Florida law he was an *intended* beneficiary, since an intent to benefit a third party which must be inferred from contradicted evidence cannot be characterized as 'apparent,' 'direct' or 'primary.'" *Ginsberg*, 2021 WL 7707264, at *9 (emphasis original) (citing *Hewko v. Genovese,* 739 So.2d 1189, 1192 (Fla. 4th DCA 1999)).

Absent any specific mention of Wu in the Purchase Agreement, Wu cannot establish that he was the primary and direct *intended* beneficiary of the bargain between Plaintiff and FIBF for the sale and acquisition of a minority interest in the company. *See Tartell v. Chera*, 668 So.2d 1105, 1106 (Fla. 4th DCA 1996) (finding defendant was at best an incidental beneficiary). No other language or provision indicates a clear intent by the signatories to confer a benefit on Wu.

*Ginsberg*, 2021 WL 7707264, at *9. The Purchase Agreement is obviously and primarily intended to convey membership interests, not confer a benefit on Wu. Indeed, Wu does not even attempt to establish that he was "the primary and direct intended beneficiary" of the Purchase Agreement. *Id.* Consequently, Wu cannot rely on the third-party beneficiary doctrine to compel arbitration. *Id.*

Moreover, Wu's Petition cannot support standing to compel arbitration by way of common law agency, fiduciary, or third-party beneficiary status. FIBF, the only other party to the transaction with Plaintiff, is <u>not</u> a named defendant in this case and the sale of the membership interests between Plaintiff and FIBF is <u>not</u> being disputed. Significantly, the Amended Complaint does **<u>not</u>** claim rights under the Purchase Agreement which contains the Arbitration Clause. The duties or obligations which Plaintiff and the Class allege Defendants breached are statutory duties, owed independently of the Purchase Agreement. Whether Wu qualifies as "other persons" under the Purchase Agreement is irrelevant to the gravamen of this case which is that Wu and Lam committed acts of fraud and engaged in a pattern of racketeering activity in violation of Chapters 817 and 517, Florida Statutes.

Accordingly, because the Amended Complaint negates Wu's contention that he has standing to enforce Plaintiff and non-party FIBF's Arbitration Clause in the instant dispute over Wu's fraudulent conduct and violation of state and federal statutes, and because there is no written arbitration agreement between Wu and Plaintiff, the Petition must be dismissed.

### C. FIBF AND PLAINTIFF, AS SOLE SIGNATORIES TO THE PURCHASE AGREEMENT, WAIVED ALL RIGHTS TO ARBITRATION

Contemporaneously with the Receivership Action, Plaintiff also commenced a direct lawsuit against FIBF and Lam for equitable and statutory accounting. Subsequently, pursuant to a signed stipulation between the Plaintiff and the Receiver (on behalf of FIBF), the parties agreed to waive the arbitration provisions in Sections 4.5 and 4.12 of the Purchase Agreement [ECF No. 8-66, pp.45-48], as approved by the state court, *see* **Exhibit "A"** attached.

Plaintiff's and FIBF's waiver of the Arbitration Clause is analogous to *Marcus v. Florida Bagels, LLC*, 112 So.3d 631 (Fla. 4th DCA 2013), wherein the court held that the non-signatory defendant could not rely on equitable estoppel to enforce the arbitration clause in certain development agreements because the parties to that contract did not wish to proceed with arbitration. *Id.* at 634–35. The court explained that "since the plaintiffs ... want no part of arbitration for any aspect of their claim and BWB has elected to proceed in court—Marcus may not rely on equitable estoppel to compel arbitration." *Id.* at 635. Like in *Marcus*, the sole

signatories to the Purchase Agreement "frustrated the agreement's performance by repudiating arbitration and electing to pursue judicial process." *Id.* (citing *Ben-Yishay v. Mastercraft Dev., LLC*, 08-CV-14046-KMM, 2009 WL 6387928, at *6 (S.D.Fla. Dec. 14, 2009)) ("Once those rights have been frustrated, however, a nonsignatory may not avail themselves of an arbitration provision to which they are not a party"). Thus, application of equitable estoppel would impermissibly provide Wu the ability to nullify the choice Plaintiff and FIBF, as signatories, were allowed to make. *Id.* In seeking to enforce an arbitration clause voluntarily waived by the only signatories to the Purchase Agreement, Wu effectively asks this Court to make an "unprecedented ruling by ordering arbitration of claims against parties, … for claims arising under a contract where the actual signatories specifically agreed not to arbitrate." *Blue Cross & Blue Shield of Georgia, Inc. v. DL Inv. Holdings, LLC*, 2018 WL 6583882, at *11 (N.D.Ga. Dec. 14, 2018).

Further, the state court previously entered Final Judgment against FIBF wherein Plaintiff was awarded all equitable relief sought in Count III of the Second Amended Complaint [ECF No. 8-66, pp.56-58, ¶2], which specifically sought a declaration that *"all FIBF's members' ownership percentages are free and clear of all restrictions, limitations or conditions." See* attached **Exhibit "B"**. Thus, the Arbitration Clause is no longer enforceable against and between Plaintiff and FIBF, and therefore Wu and Lam similarly cannot enforce it. "[I]n the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay*, 389 F.3d at 1200. Accordingly, as Plaintiff and FIBF have expressly waived the right to arbitration under the Purchase Agreement, Wu, a non-signatory, has no power to compel arbitration of Plaintiff's state law claims.[11]

### D. WU WAIVED ANY ALLEGED RIGHT TO ARBITRATION

"[A] party may, through its own conduct, waive the right to arbitration." *Cruickshank v. Royal Caribbean Cruises, Ltd.*, 14-CV-21209, 2014 WL 12589129, at *2 (S.D.Fla. June 4, 2014) (Williams, J.). In addition to substantively responding to Plaintiff's Emergency Motion, moving to vacate the state court's March 24, 2023 order [ECF No. 8-41], for protective order [ECF No. 8-30], and to limit admissibility of certain evidence [ECF No. 8-48], and filing four separate

---

[11] Even assuming *arguendo* Wu is an "agent" of FIBF, "[t]he power of an agent cannot exceed that of his principal." *Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 267 (5th Cir.1981); *Crowder v. Wolary*, 198 So. 9, 12 (Fla.1940) ("larger powers cannot be imputed to an agent than the principal himself possesses").

objections to non-party discovery [ECF Nos. 8-56; 8-57; 8-58; 8-59], Wu also discovery requests [ECF Nos. 8-52, p.4; 8-66, pp.35-43], and set two (2) depositions [ECF Nos. 8-52; 8-54] — all *prior* to filing his Motion to Compel Arbitration and Petition. Consequently, Wu's active participation in the state court case results in a waiver arbitration. "[I]t is ***crystal clear*** in this district that we apply the broad rule that any defendant who 'seek[s] the benefits of the discovery rules prior to filing [his] motion to arbitrate,' forfeits his right to arbitration." *Estate of Orlanis ex rel. Marks v. Oakwood Ter. Skilled Nursing & Rehab. Ctr.*, 971 So.2d 811, 813 (Fla. 3d DCA 2007) (quoting *Pref. Mut. Ins. Co. v. Matrix Const. Corp.*, 662 So.2d 432, 432 (Fla. 3d DCA 1995)) (emphasis added). "The law in this district seems to admit no exceptions." *Id.*

"Courts in this circuit typically apply the state law standard to waiver of different contractual rights, with some deviation." *Gaudreau v. My Pillow, Inc.*, 21-CV-1899-CEM/DAB, 2022 WL 3098950, at *7 (M.D.Fla. July 1, 2022). "At the very least, Eleventh Circuit precedent counsels in favor of consulting state law to govern waiver of arbitration agreements—insofar as it comports with *Morgan*'s edict against arbitration-specific rules." *Id.* (citing *Morgan v. Sundance, Inc.*, 212 L.Ed.2d 753 (2022)). State law is applicable to determine which contracts are binding under 9 U.S.C. § 2 and enforceable under 9 U.S.C. § 3 "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (quoting *Perry v. Thomas,* 482 U.S. 483, 493, n.9 (1987)). "*Morgan* abrogated much—perhaps most—of the Eleventh Circuit's precedent on waiver of arbitration agreements" and "clearly struck down both the prejudice and burden-of-proof requirements." *Gaudreau*, 2022 WL 3098950, at *7. "This leaves only the first prong of the waiver test" which is "satisfied when a party seeking arbitration substantially participates in litigation." *Id.* "Courts may find that a party has waived its right to arbitrate if, under the totality of the circumstances, a party has acted inconsistently with the arbitration right." *Cruickshank*, 2014 WL 12589129, at *2. "A key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration." *Warrington v. Rocky Patel Premium Cigars, Inc.*, 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) (finding defendant waived right to arbitrate despite the case being in "beginning stages" and not making it "very far."); *see also Klosters Rederi A/S v. Arison Ship. Co.*, 280 So.2d 678, 681 (Fla.1973) ("A party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right").

Here, "Defendant participated in the instant litigation to a degree inconsistent with an intent

to arbitrate." *Mitchell-Hilton v. Celebrity Cruises, Inc.*, 09-CV-23546-ASG, 2010 WL 11504312, at *3 (S.D.Fla. Mar. 26, 2010) (finding that defendant who engaged in motion practice and propounded its own discovery, including filing a notice of deposition, waived its right to enforce an arbitration agreement within 9 U.S.C. § 205 which "was the sole basis for removal of [the] action to federal court"). Wu actively sought discovery directed to the substantive issues in this matter and filed multiple motions, responses, and objections seeking affirmative relief from the state court. Under Florida law, propounding discovery directed to the merits of pending litigation before moving to compel arbitration constitutes actions inconsistent with the right to arbitrate and results in a waiver of arbitration. *See Estate of Orlanis*, 971 So.2d at 813; *Lion Gables Realty Ltd. v. Randall Mech., Inc.*, 65 So.3d 1098, 1101 (Fla. 5th DCA 2011) ("The law in Florida is clear that a party's participation in merits discovery constitutes a waiver of arbitration."); *Gordon v. Shield,* 41 So.3d 931, 933 (Fla. 4th DCA 2010) ("[T]he active participation in litigation or the propounding of discovery would be circumstances where the right to arbitrate would be deemed waived."); *see also Green Tree Servicing, LLC v. McLeod*, 15 So.3d 682, 688 (Fla. 2d DCA 2009); *Olson Elec. Co., Inc. v. Winter Park Redev. Agency*, 987 So.2d 178, 179 (Fla. 5th DCA 2008); *Done & Done, LLC v. Data Payment Sys., Inc.*, 322 So.3d 211, 212 (Fla. 3d DCA 2021), *reh'g denied* (Aug. 16, 2021); *Sitarik v. JFK Med. Ctr. Ltd. P'ship*, 11 So.3d 973, 974 (Fla. 4th DCA 2009); *Maryland Cas. Co. v. Dep't of Gen. Servs.*, 489 So.2d 54, 57 (Fla. 1st DCA 1986); *Coral 97 Assocs., Ltd. v. Chino Elec., Inc.*, 501 So.2d 69, 70–71 (Fla. 3d DCA 1987).

As Wu's actions during the pendency of the state court action "communicate[d] a willingness to engage in litigation not arbitration", thus constituting a waiver of Wu's alleged arbitration rights, the Court must remand this case back to state court. *Cruickshank*, 2014 WL 12589129, at *3 (remanding case and finding that "[b]ecause the arbitration agreement is unenforceable as a result of RCC's waiver, no other grounds for federal jurisdiction exist").

### E. Plaintiff is Entitled to an Award of Attorney Fees and Costs

An "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). While such an award is within the Court's discretion, "[a]ssessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing

party." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005). When a removing party lacks an "objectively reasonable basis for seeking removal", fees should be awarded. *Id.* at 141.

Here, Wu had no objectively reasonable basis for removing this case. Wu concedes there is no written arbitration agreement between himself and Plaintiff. Wu knew the requirements for removal under 9 U.S.C. § 205, knew that he could not fulfill those requirements, but removed the case anyway. Wu's unreasonable removal of this case accomplished exactly what the Supreme Court condemned in *Martin*: prolonging the litigation process and wasting judicial resources. Accordingly, Plaintiff respectfully submits that costs and attorney fees are appropriate.

### F. CONCLUSION

For the reasons set forth above, Wu's Petition fails. "[T]he only ground cited for federal jurisdiction" in the Petition "is the Convention's authority regarding the arbitration provision of the [purchase] agreement." *Cruickshank*, 2014 WL 12589129, at *3. Plaintiff's state law claims are otherwise not removable. *Id.* "Because the arbitration agreement is unenforceable as a result of [Wu's] waiver, no other grounds for federal jurisdiction exist." *Id.*

Accordingly, the Court must dismiss Wu's Petition and remand this case back to the state court. *Id.*; *see Beiser*, 284 F.3d at 675 ("If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court. … such that the state court will be able to resolve the merits of the dispute."); *Sivanandi v. NCL (Bahamas) Ltd.*, 10-CV-20296-UU, 2010 WL 1875685, at *4 (S.D.Fla. Apr. 15, 2010) (finding that an arbitration agreement was unenforceable and remanding the case because no other grounds for federal jurisdiction existed); *Ruvalcaba v. ET Publ'g Intern., Inc.*, 09-CV-20782-FAM, 2009 WL 1606528, at *1 (S.D.Fla. June 9, 2009) (remanding to state court after determining that no agreement to arbitrate existed); *Ellis v. Oceania Cruises, Inc.*, 19-CV-22732-DPG, 2020 WL 13358551, at *3 (S.D.Fla. Mar. 23, 2020); *Mitchell-Hilton*, 2010 WL 11504312, at *3 (citing *Beiser*, 284 F.3d at 675) ("Because it is no longer 'conceivable that the arbitration clause will impact the disposition of the case,' Section 205 of the Convention Act no longer provides this Court with subject-matter jurisdiction and, as a result, this action must be remanded to state court."); *Watt*, 2010 WL 2403107, at *3 ("Because the arbitration agreement is unenforceable, removal pursuant to the Convention Act–the sole basis for removal–was not proper. The Court accordingly finds that remand is warranted").

Dated: May 23, 2023            Respectfully Submitted,

**READ LAW PLLC**            **BARRY S. TURNER P.A.**
*Co-Counsel for Plaintiff*            *Co-Counsel for Plaintiff*
25 SE Second Ave, Eighth Floor            PO Box 330189
Miami, Florida 33131            Miami, Florida 33233
Phone: (305) 209-2131            Phone: (305) 699-4392
Email: asr@alexisreadlaw.com            Email: bt@bstpa.com

By: /s/ *Alexis S. Read*            By: /s/ *Barry S. Turner*
Alexis S. Read, Esq.            Barry S. Turner, Esq.
Fla. Bar No. 98084            Fla. Bar No. 85535

**PHANG & FELDMAN, P.A.**
*Co-Counsel for Plaintiff*
1125 NE 125th Street, Suite 303
North Miami, Florida 33161
Phone: (305) 614-1223
E-mail: feldman@katiephang.com

By: /s/ *Jonathan S. Feldman*
Jonathan S. Feldman, Esq.
Fla. Bar No. 12682

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 23, 2023, a true and correct copy of the foregoing was served via e-mail to those parties required to receive e-mail service pursuant to Fla. R. Jud. Admin. 2.516, and/or by U.S. Mail to the following interested parties on the Court's E-Filing Service List.

By:      /s/ *Alexis S. Read*
           Alexis S. Read, Esq.
           Fla. Bar No. 98084