**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-21541-CV-WILLIAMS**

CHUN LIU**,**

    Plaintiff,

v.

FU JING WU, *et al.*,

    Defendants.

_____/

# ORDER

**THIS MATTER** is before the Court on the Motion to Compel Arbitration and Notice of Removal and Application for Stay (DE 1) filed by Defendant-Petitioner Fu Jing Wu ("***Defendant Wu***" or "***Mr. Wu***") to which Plaintiff-Respondent Chun Liu ("***Plaintiff***" or "***Mr. Liu***") filed a Response in Opposition and Motion to Remand (DE 13) to which Defendant Wu filed a Response in Opposition (DE 14).[1]  For the reasons set forth below, Defendant Wu's Motion to Compel Arbitration (DE 1) is **DENIED** and Plaintiff's Motion to Remand (DE 14) is **GRANTED**.

---

[1] Defendant Wu improperly filed a Reply in Support of the Motion to Compel Arbitration and to Stay this Litigation (DE 6) on May 1, 2023, prior to the filing and service of Plaintiff's response in opposition to the Motion to Compel Arbitration.  Defendant Wu failed to comply with Southern District of Florida Local Rule 7.1(c), which sets forth that a "reply memorandum shall be **strictly limited to rebuttal of matters raised in the memorandum in opposition** without reargument of matters covered in the movant's initial memorandum of law." *See* S.D. Fla. L.R. 7.1(c).  Nonetheless, despite Defendant Wu's noncompliance, the Court reviewed and considered Defendant Wu's reply memorandum (DE 6).

**I.   BACKGROUND**

Plaintiff filed a class action suit against Defendant Wu and Defendant Wai Kin Benny Lam (collectively, "***Defendants***") for an alleged financial scheme aimed at fraudulently raising and diverting funds from individuals seeking to establish permanent residency in the United States of America through the federal EB-5 visa program.  This case was originally filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida on March 16, 2023.  (DE 8-3.)  Subsequently, Defendant filed the Motion to Compel Arbitration in conjunction with a Notice of Removal, removing the case to federal court on May 23, 2023.  (DE 1.)  Plaintiff's First Amended Complaint alleges four (4) claims against Defendants: (i) fraud ("***Count I***"); (ii) violation of Florida Securities and Investor Protection Act, Fla. Stat. § 517.301(1) ("***Count II***"); (iii) violation of the Florida Racketeer Influenced and Corrupt Organizations Act ("***Count III***"); and (iv) conspiracy to violate Florida Racketeer Influenced and Corrupt Organizations Act ("***Count IV***").  (DE 8-18.)

Under the federal EB-5 visa program, administered by the United States Citizenship and Immigration Services ("***USCIS***"), foreign nationals can establish permanent residency in the United States through substantial financial investment in a commercial enterprise that creates at least ten (10) full-time, qualifying jobs.  (*Id.* at 5.) Between 2009 and 2013, Defendant Wu and others applied for and received USCIS approval to build the South Florida Investment Regional Center LLC in Miami, Florida ("***Regional Center***").  (*Id.* at 6.)  From 2013 to 2017, Defendants and others promoted this Regional Center, now known as the Triton Center Project ("***Project***"), to Plaintiff and

other foreign investors as a tool to participate in a job creation venture through real estate financing and acquisition. (*Id.*)

Plaintiff and others invested $500,000 towards the Project by means of purchasing one membership unit/percentage interest in Florida Immigration Building Funding ("**FIBF**"), a commercial enterprise formed by Defendant Wu to raise money for the Project. (*Id.*) The Project's second phase would require an additional $500,000 investment into Triton 7880, LLC ("**T7880**"), a second commercial enterprise formed by Defendant Wu. (*Id.* at 7.) After raising over $62 million from investors, Plaintiff alleges Defendant Wu "loaned" the funds invested in FIBF to a job-creating venture controlled by Defendants, Florida Fullview Immigration Building, LLC ("**Fullview**"), to purchase the land for the Project. (*Id.* at 5–7.) Plaintiff brings this suit as a class action on behalf of himself and all persons who own and hold a membership interest in FIBF. (*Id.* at 20.)

According to Plaintiff, Defendant Wu and Fullview made representations to Plaintiff and the Class that funds loaned from FIBF and T7880 were to be used exclusively on the Project. (*Id.* at 7–8.) As such, FIBF and Fullview entered into a loan agreement (the "**Loan Agreement**"). (*Id.* at 9.) Plaintiff alleges that Defendants transferred tens of millions of dollars directly from FIBF bank accounts to Defendants' personal accounts and offshore entities owned or controlled by Defendant Wu that were unrelated to the Project. (*Id.* at 10–11.) Plaintiff contends that Defendants also utilized these diverted funds to purchase properties that were unrelated to the Project and were therefore outside the scope of the Loan Agreement. (*Id.* at 12–19). These purchases included a vacant property and trailer park at 8540 Biscayne Boulevard in Miami, Florida (**"Trailer Park Property"**), the $13 million purchase of which was done entirely with funds from FIBF.

(*Id.* at 15–16.)  The Trailer Park Property was cross-collateralized by the other Project properties; thus, a default on the Trailer Park Property could cause foreclosure on the Project properties.  (*Id.* at 16.)  Plaintiff alleges that Defendants made misrepresentations regarding the use of funds from FIBF and T7880, as they refused to provide information regarding the funds to investors' counsel: upon inquiry of the location or use of the funds, Defendants would respond by suggesting that the investors replace their counsel in an effort to conceal their actions. (*Id.* at 17–18.)

Today, the Project is incomplete and its property vacant.  (*Id.* at 8.)  Plaintiff alleges that Defendants' actions were done with a willing intent to defraud, thereby destroying investors' opportunity of obtaining citizenship through the federal EB-5 visa program.  (*Id.* at 18–19.)  Defendant Wu contends that Plaintiff's claims are solely based on issues that arise from the terms of the relationship between Plaintiff and FIBF for a membership in the company governed by the Limited Membership Interest Subscription, Sale, and Purchase Agreement ("**Purchase Agreement**"), which contains an arbitration clause. (DE 1 at 3.)  Thus, Defendant Wu argues that Plaintiff must submit his claims to arbitration pursuant to the Purchase Agreement.  (*Id.*)  Furthermore, Defendant Wu contends that Plaintiff's First Amended Complaint implicates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("**Arbitration Treaty**"), as Plaintiff is a Chinese national and Defendant Wu is Canadian.  (*Id.*)

## II.     LEGAL STANDARD

The New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "**Convention**") is incorporated into federal law by the Federal Arbitration Act ("**FAA**"), which governs the enforcement of arbitration agreements and arbitral awards

made pursuant to such agreements in federal and state courts. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 269–73 (1995); *see also* 9 U.S.C. § 201 (mandating the enforcement of the Convention in U.S. courts). "Chapter 2 [of the FAA] generally establishes a strong presumption in favor of arbitration of international commercial disputes, and creates original federal subject-matter jurisdiction over any action arising under the Convention." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998) ("The Convention, and American enforcement of it through the FAA, provide[] businesses with a widely used system through which to obtain domestic enforcement of international commercial arbitration awards resolving contract and other transactional disputes, subject only to minimal standards of domestic judicial review for basic fairness and consistency with national public policy.") (internal quotations omitted) (citing 9 U.S.C. § 203).

Section 205 of the FAA provides federal courts with removal jurisdiction over actions relating "to an arbitration agreement ... falling under the Convention." 9 U.S.C. § 205 ("Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."). An arbitration agreement is governed by the Convention, requiring a district court to order arbitration when the following four jurisdictional prerequisites are met:

> (1) there is an agreement in writing within the meaning of the Convention;
> (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the

agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 n.7 (11th Cir. 2005); 9 U.S.C. § 202. Once these prerequisites are met, a court must compel arbitration unless one of the Convention's affirmative defenses applies. *Id.* ("A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met, or (2) one of the Convention's affirmative defenses applies."); *see also Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011). In deciding whether to compel arbitration under the Convention, courts should engage in a "very limited inquiry." *Lindo*, 652 F.3d at 1275 (quoting *Bautista*, 396 F.3d at 1294). Such an inquiry is "colored by a strong preference for arbitration." *Bautista,* 396 F.3d at 1301.

The Court notes that the United States Supreme Court has consistently recognized that the strong presumption favoring arbitration applies with "special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). That presumption requires courts to resolve any questions concerning the scope of arbitrable issues in favor of arbitration "unless ... it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).

### III. DISCUSSION

#### A. Motion to Compel Arbitration

Here, Plaintiff concedes that three of the four requirements for an agreement to fall under the Convention are met in the present case: the arbitration clause in question provides for arbitration to occur in the U.S., the agreement arises out of a legal

commercial relationship between FIBF and its members, and Plaintiff is not a citizen of the United States. (DE 13 at 6.) However, Plaintiff contends that the first requirement—that there be an agreement in writing within the meaning of the convention—is not met. (*Id.*)  The Court agrees.

Under Article II of the Convention, "[t]he term 'agreement in writing' shall include an arbitral clause . . . signed by the parties or contained in an exchange of letters or telegrams."  *See* The United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (Dec. 29, 1970).  The arbitration clause which Defendant Wu relies upon is contained within the Purchase Agreement between Plaintiff and FIBF.  (DE 6 at 5.)  Defendant Wu is not a signatory to the Purchase Agreement and, therefore, to the arbitration clause.  Absent an arbitral clause signed by the Parties, there is no agreement in writing as defined by the Convention, and as such the four jurisdictional prerequisites for the arbitration agreement to fall under the Convention are not met.

Nonetheless, the Eleventh Circuit has held that a lack of a written arbitration agreement does not preclude a party from compelling arbitration in certain situations. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), *abrogated on other grounds by Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011) (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 756–57 (11th Cir.1993)). "This is because 'there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration.'" *Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard B.V.*, 2020 WL 5627263, at *4 (S.D. Fla. June 8, 2020) (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947).  "A second exception exists

when, 'under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'" *Id*. "A third 'exception arises when the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract.'" *Id.* Should one of the exceptions apply, Defendant Wu could compel arbitration despite his nonsignatory status with respect to the arbitration clause in the Purchase Agreement.

      **1.**      **Defendant Cannot Rely on the Equitable Estoppel Exception to Compel Arbitration.**

The first instance in which equitable estoppel can allow a nonsignatory to compel arbitration occurs when the signatory relies on the terms of the written agreement in its claims against the nonsignatory. *Northrup*, 2020 WL 5267263, at *5 (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947). Such an exception is inapplicable in the present case. Defendant argues that because Plaintiff's claims could not be brought without the existence of the Purchase Agreement, Plaintiff necessarily relies on the terms of that Purchase Agreement to bring its claims. (DE 6 at 6.) The Court disagrees. Establishing a "but-for relationship between plaintiff's claims and the contract is insufficient to warrant equitable estoppel." *Ginsberg v. Vitamins Because LLC,* 2021 WL 7707264, at *5 (S.D. Fla. June 9, 2021) (quoting *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 264 (11th Cir. 2015)). "The purpose of [equitable estoppel] is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from 'rely[ing] on the contract when it works to [his] advantage [by establishing the claim], and repudiat[ing] it when it works to [his]

disadvantage [by requiring arbitration].'" *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y.1966)).

A signatory does not rely on an agreement to bring its claims when those claims rely on obligations otherwise imposed by law. *See Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887–88 (11th Cir. 2018); *It Works Mktg., Inc. v. Melaleuca, Inc.*, 2021 WL 1650266, at *5 (M.D. Fla. Apr. 27, 2021) (holding that claims which arose out of Florida state law and federal law rather than the contract in question did not rely on the contract). Defendant Wu cannot rely on the first equitable estoppel exception because the claims against him do not rely on the terms of the Purchase Agreement containing the arbitration clause.  Plaintiff does not seek to enforce his contractual rights under the Purchase Agreement.  Rather, Plaintiff's claims are based on common law and state statutes such as the Florida Securities and Investor Protection Act and the Florida Racketeer Influenced and Corrupt Organizations Act. The Court finds no terms in the Purchase Agreement that Plaintiff claims to have been breached or which Plaintiff seeks to enforce through this suit. (DE 8-18.)  While the First Amended Complaint mentions the Purchase Agreement, as noted in Defendant Wu's Motion (DE 6 at 6), Plaintiff refers to it as one of many documents, which, in the aggregate, indicate that money could not be taken from FIBF for purposes aside from the provisions of the loan agreement.[2] (DE 8-18 at 46.)  Although it may be true that Plaintiff's claims could not be brought without first holding membership

---

[2] Plaintiff does, in part, rely on the loan agreement between FIBF and Fullview to bring its claims, which Plaintiff contends Defendant violated by utilizing FIBF funds for purposes other than the Project. (DE 8-18 at 7.)  However, the loan agreement, unlike the Purchase Agreement, contains no arbitration clause.

in FIBF, Plaintiff does not use the express terms of the Purchase Agreement to bring his claims.  Therefore, Plaintiff's claims may "touch" the Purchase Agreement,[3] but mere but-for causation falls short of the reliance necessary to apply equitable estoppel.

The second instance in which equitable estoppel can allow a nonsignatory to compel arbitration occurs when the signatory alleges interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract. *Northrup*, 2020 WL 5267263, at *5 (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947). This exception is also inapplicable in the present case because Plaintiff brings claims against Defendant Wu who did not sign the Purchase Agreement.  For this scenario to apply, Plaintiff would need to have also alleged claims against FIBF, the only other signatory to the Purchase Agreement.  Absent any claim against FIBF, the second circumstance in which equitable estoppel can be applied is also inapplicable.

2.	**Defendant Cannot Rely on Agency Principles to Compel Arbitration.**

The agency exception allows a nonsignatory to compel arbitration against a signatory when the relationship between the signatory and nonsignatory defendants "is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer Serv. Corp.*, 177 F.3d at 947 (quoting *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997)). Though Chapter 2 of the FAA establishes a strong presumption in favor of arbitration in international disputes, *Mitsubishi Motors Corp.*, 473

---

[3] In *Hill v. G E Power Sys., Inc.*, the Fifth Circuit held that the first prong of the equitable estoppel exception could not be applied where the claims merely "touch" matters covered in the agreement containing the arbitration clause, but rather the claims must rely upon the express terms of the agreement. *See* 282 F.3d 343, 348–49 (5th Cir. 2002).

U.S. at 638-40, exceptions to the rule that nonsignatories cannot compel arbitration should be rarely applied and depend largely on the factual circumstances.[4] *See Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. 1st Dist. Ct. App. 2004). This exception is inapplicable in the present case.

Plaintiff alleges in the First Amended Complaint that FIBF, a signatory to the Purchase Agreement, "was completely dominated and controlled by Wu who operated FIBF for his … benefit." (DE 8-18 at 3.) However, "a non-signatory cannot compel arbitration merely because he is an agent of one of the signatories." *Koechli*, 870 So. 2d at 944 (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002)); *Liberty Commc'ns, Inc. v. MCI Telecommunications Corp.,* 733 So. 2d 571 (Fla. 5th Dist. Ct. App. 1999) ("Signing a contract as an agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally.")  In this action, Plaintiff does not make any allegations against FIBF.  Further, Plaintiff brings all claims against Defendant in his individual capacity rather than as a representative of FIBF.  (DE 13 at 9.)  This Court does not eviscerate the underlying arbitration agreement between Plaintiff and FIBF by not allowing the nonsignatory defendant to compel arbitration, as the Purchase Agreement's arbitration clause would still control in a dispute between Plaintiff and FIBF.  Accordingly, Defendant cannot rely on the agency principles exception to compel arbitration in this case.

---

[4] The Parties in this case rely on Florida law in their briefing, therefore this Court applies Florida law in resolving contractual disputes. *See Ginsberg*, 2021 WL 7707264, at *13 n.5.

### 3. Defendant Cannot Rely on the Third-Party Exception to Compel Arbitration.

The third-party beneficiary exception allows a nonsignatory to compel arbitration when the parties to a contract agree upon formation to confer certain benefits upon a third party, "affording that third party rights of action against them under the contract." *MS Dealer Serv. Corp.*, 177 F.3d at 947 (quoting *Boyd*, 981 F. Supp. at 1432). "Under Florida law, a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). "If the contracting parties had no such purpose in mind, any benefit from the contract reaped by the third party is merely 'incidental,' and the third party has no legally enforceable right in the subject matter of the contract." *Id.* "The Florida Supreme Court has explained that the question whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract." *Id.* (citing *A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397, 402 (Fla. 1973)). "The contracting parties' intent to benefit the third party must be specific and must be clearly expressed in the contract in order to endow the third-party beneficiary with a legally enforceable right." *Id.* In the absence of any "specific mention" of the third party, "it would be extraordinarily difficult for [that party] to establish that under Florida law he was an intended beneficiary, since an intent to benefit a third party which must be inferred from contradicted evidence cannot be characterized as 'apparent,' 'direct' or 'primary.'" *Id.* (citing *Hewko v. Genovese*, 739 So. 2d 1189, 1192 (Fla. 4th Dist. Ct. App. 1999)).

Here, there is no specific mention of Defendant Wu in the Purchase Agreement. Mr. Wu does not point to any specific section of the Purchase Agreement which could

indicate an intent by the contracting parties to confer a benefit onto any third party.  Consequently, the Court concludes that Defendant Wu cannot rely on the third-party beneficiary exception.  In all, the Court finds that the arbitration clause in the Purchase Agreement does not meet all four factors required for an arbitration agreement to be covered under the Convention, as there is no agreement in writing within the meaning of the Convention, and no exceptions apply which could allow the nonsignatory defendant to compel arbitration.[5]  As such, Defendant Wu cannot compel arbitration on Plaintiff's claims in this action.

### B. Motion to Remand

Defendant Wu's only basis for federal jurisdiction, as set forth in the notice of removal, is Section 205 of the FAA.  Because the Court concludes compelling arbitration of Plaintiff's claims to be inappropriate under the Convention, and Defendant Wu has not provided any additional basis for the Court to retain jurisdiction in the notice of removal, the Court grants Plaintiff's motion to remand and orders the case to proceed in state court.  *See Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir. 2002) ("If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court.").

Plaintiff also seeks an award of attorney's fees and costs incurred as a result of the removal of this action.  *See* 28 U.S.C. § 1447(c).  While the Court will deny Plaintiff's request in this instance, the Court cautions Defendant Wu to avoid the removal of any litigation that lacks an objectively reasonable basis for removal.

---

[5] The Court does not address Plaintiff's affirmative defense of waiver because the arbitration clause in question does not fall under the Convention.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Compel Arbitration and Notice of Removal and Application for Stay (DE 1) is **DENIED**;

2. Plaintiff's Motion to Remand (DE 13) is **GRANTED**;

3. Plaintiff's request for attorney's fees and costs is **DENIED**;

4. The Clerk of Court is directed to **REMAND** this matter to the Eleventh Judicial Circuit Court, in and for Miami-Dade County, Florida; and

5. All pending motions are **DENIED AS MOOT** and all pending deadlines are **CANCELED**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>5th</u> day of January, 2024.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE